**SILVERMANACAMPORA LLP**  
Attorneys for LKS Concepts, LLC,  
 d/b/a Dylan Prime  
100 Jericho Quadrangle, Suite 300  
Jericho, New York 11753  
(516) 479-6300  
Gerard R. Luckman, Esq.  
Cooper J Macco, Esq.

Hearing Date:   October 29, 2013  
Time:            10:00 a.m.

Objections Due: October 22, 2013  
Time:            4:00 p.m.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------------------X  
In re:

LKS CONCEPTS, LLC, d/b/a DYLAN PRIME,

                               Debtor.  
------------------------------------------------------------------------X

Chapter 11

Case No. 13-11390 (JMP)

**FIRST AND FINAL APPLICATION FOR
ALLOWANCE OF SILVERMANACAMPORA LLP,
ATTORNEYS FOR DEBTOR AND DEBTOR IN POSSESSION,
FOR COMPENSATION FOR PERIOD APRIL 30, 2013 THROUGH
AND INCLUDING AUGUST 31, 2013, AND REIMBURSEMENT OF EXPENSES**

TO:   HONORABLE JAMES M. PECK  
       UNITED STATES BANKRUPTCY JUDGE

      SilvermanAcampora LLP (the "Applicant"), attorneys for LKS Concepts, LLC, d/b/a Dylan Prime (the "Debtor"), the above-captioned debtor and debtor in possession, submits this first and final application for compensation (the "Application") seeking the entry of an order pursuant to sections 105 and 330 of title 11, United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. §§330 and 331, adopted on January 30, 1996 (the "UST Guidelines"), and Administrative Order M-447 dated January 29, 2013 Re: Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Administrative Order" and, collectively with the UST Guidelines, the "Guidelines"), and respectfully sets forth and represents as follows:

**PRELIMINARY STATEMENT**

1. By this Application, SilvermanAcampora seeks (a) final allowance and award of compensation for the professional services rendered as attorneys for the Debtor for the period of April 24, 2013 through and including August 31, 2013 (the "Application Period") in the amount of $68,231.50 and (b) reimbursement of actual and necessary expenses incurred by Applicant during the Application Period in connection with the rendering of its services in the amount of $2,780.56.[1]

2. After application of the amounts paid to Applicant to date, Applicant is owed a total of $41,012.06, which amount includes Applicant's fees and expenses.

3. Jurisdiction over these proceedings and this Amended Application is based upon 28 U.S.C. §§157(a) and 1334, and the Order of the United States District Court for the Southern District of New York to amend the Standing Order of Reference M-61 (Preska, C.J.), dated January 31, 2012. This Court is the proper venue for this proceeding in accordance with 28 U.S.C. §§1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code §330 and Bankruptcy Rule 2016.

**BACKGROUND**

4. On April 30, 2013 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.

5. On June 13, 2013, Debtor filed an Application to employ the Applicant as attorneys for the Debtor (ECF Doc. 20) (the "Retention Application"). Thereafter, the Court entered an Order approving the Retention Application and authorizing the retention of Applicant (ECF Doc. 30).

---

[1] Although the time records and invoices, annexed hereto as **Exhibit D**, indicate that $3,677.50 are the actual and necessary expenses incurred by the Applicant during the Application Period, this calculation includes a copying fee of $1,793.80, at a cost $0.20 per page. However, Applicant is only seeking reimbursement of $896.90 based on a $0.10 per page charge, reducing the expenses to $2,780.56.

6. Due to the Debtor's business being padlocked by the New York State Department of Taxation and Finance ("NYS DTF"), the Debtor was not operating its business, even in a limited manner, as of the Petition Date. However, the Debtor continued to manage its property as a debtor in possession pursuant to Bankruptcy Code §§1107(a) and 1108 as it commenced the orderly liquidation of its assets. To date, no committee, trustee, or examiner has been appointed in the Debtor's case.

7. The Debtor's stated intention at the outset of this case was to engage in an orderly liquidation of its business and consummate an asset purchase agreement (the "APA") with Laight Restaurant Corporation ("Laight"), subject to higher or better offers and Rule 9019 of the Federal Rules of Bankruptcy Procedure the Court's approval of both the sale procedures (the "Sale Procedures") and the sale (the "Sale"). The APA provided for, among other things, the sale of any and all right, title, and interest in and to substantially all of the Debtor's assets (the "Assets"), as well as the assumption and assignment of certain unexpired leases and executory contracts (the "Contracts"), including the unexpired lease of non-residential real property (the "Lease") located at 62 Laight Street, New York, New York (the "Premises"), for consideration totaling $230,000.00 with Laight assuming any other cure costs (the "Purchase Price"), subject to higher and better offers as may be tendered at the Sale, free and clear of all liens, claims, encumbrances, security interests and other restrictions on transfer (collectively, the "Liens"), with such interests, if any, to attach to the proceeds of the Sale in the amount and priority as they existed at the time of the sale.

8. By order dated June 6, 2013 (the "Procedures Order"), the Court established Sale Procedures, including approval of a break-up fee and expense reimbursement, assignment procedures and notice guidelines (ECF Doc. No. 20). Thereafter, the Debtor engaged in a marketing program consistent with the Procedures Order, and the Sale was scheduled to be held on June 18, 2013 (the "Auction Date"). No parties tendered a competing offer to the

Debtor or Debtor's counsel.  On the Auction Date, Laight was the only bidder to appear for the Sale.

9. By order dated July 9, 2013 (the "Sale Order"), the Court: (i) approved the Sale of the Debtor's Assets outside the ordinary course of business; (ii) authorized the Sale of the Assets free of the Liens; (iii) authorized and approved the APA; and (iv) approved the assumption and assignment of the Contracts.  The Debtor closed on the Sale with Laight on July 15, 2013 (the "Closing").

10. As a result of the Closing, the Debtor received the Purchase Price, less the amount of the deposit previously received at the Sale.  Pursuant to the APA, $200,000.00 of the Purchase Price was allotted to E&G Realty (the "Landlord") as a significantly reduced cure payment ("Lease Cure"), for arrears the Debtor owed both prior to and after the Petition Date under the Lease.

11. On September 10, 2013, in light of the Sale, the Debtor filed a Motion to Approve an Order (I) Approving Insurance Settlement; (II) Providing for the Dismissal of the Debtor's Chapter 11 Bankruptcy Case; and (III) Authorizing Distribution of Estate Proceeds in Connection with the Dismissal (ECF Doc 32) (the "Motion to Dismiss").  As more thoroughly stated in the Motion to Dismiss, due to the Sale, the Debtors do not intend to file a Plan and Disclosure statement, and instead request, *inter alia*, that the case be dismissed.

12. Due in large part to the Applicant's efforts during the Application Period, the only assets the Debtor believes have any significant value are an unpaid insurance settlement, in the amount of $50,561.03 (the "Insurance Settlement"), with Admiral Indemnity Company ("Admiral"), the balance of the Purchase Price ($30,000.00) and certain funds recovered from the Marshall which were restrained as of the Petition Date with the approximate amount of $11,000.00 (the "Funds Turnover").

## THE APPLICATION

13. This Application is Applicant's first and final application requesting the payment of compensation and the reimbursement of expenses, and this Application is made pursuant to Bankruptcy Code §330.

14. Applicant is a firm of twenty-six attorneys, concentrating in the practice of, among other areas, reorganization, bankruptcy and litigation and insolvency related matters. Applicant has extensive experience in representing debtors, creditors, creditors' committees and trustees in bankruptcy proceedings before numerous Bankruptcy Courts, including the Southern and Eastern Districts of New York. As a result of Applicant's extensive experience, Applicant submits that the services it rendered in this case, as set forth below, were efficient, economical and effective.

15. A chart setting forth the categories of services rendered to the Debtor by Applicant is annexed hereto as **Exhibit A**. Annexed hereto as **Exhibit B** is a chart setting forth the amount of time each professional and para-professional expended and the current hourly billing rate for each individual. The hourly rates for each of Applicant's employees and professionals is the same rate Applicant charges its clients for similar services rendered in bankruptcy and non-bankruptcy matters. Applicant believes that these rates constitute market rates and are equal to or less than the rates charged by professionals with similar experience. Annexed hereto as **Exhibit C**, is a chart setting forth the disbursements Applicant has incurred on behalf of the Debtor during the Application Period.

16. This Application contains a summary of the legal services which Applicant rendered during the Application Period. In light of the extensive services rendered by Applicant on behalf of the Debtor, Applicant has summarized the major categories of services which were rendered, the principal problems confronted, and the services rendered. For a detailed itemization of the actual services rendered by Applicant on behalf of the Debtor during the Application Period, the Court and interested parties are referred to the time records and invoices annexed hereto as **Exhibit D**.

**PROFESSIONAL SERVICES RENDERED**

17. During the Application Period, Applicant rendered a wide range of professional services which were substantial, necessary and beneficial to the Debtor, its estate and creditors, and other parties in interest. Throughout the Application Period, Applicant was required to devote substantial professional time and resources to address a variety of issues in the Debtor's case.

Asset Analysis

18. Applicant devoted substantial time to investigate the prepetition assets of the Debtor, including the Insurance Settlement between the Debtor and Admiral.

19. Applicant engaged in extensive negotiations with counsel to Admiral in order to affect a mutually agreeable turnover of the Insurance Settlement arising from damage to the Debtor's premises as a result of Superstorm Sandy.

20. Moreover, Applicant engaged in discussions with counsel to Laight regarding the transfer of Debtor's pre-petition alcohol inventory pursuant to the terms of the New York Liquor Authority.

Asset Sale

21. During the Application Period, Applicant assisted the Debtor in selling substantially all of its assets, free and clear of all liens and encumbrances, to Laight.

22. Accordingly, Applicant negotiated both the substantive and procedural terms of the APA with Laight's counsel during the Application Period. Negotiations involved extensive communication between the Applicant and Laight's counsel in order to determine appropriate terms for this sale.

23. During the Application Period, Applicant drafted the motion (the "Sale Motion") for the entry of (1) an order pursuant to Bankruptcy Code §§105, 363 and 365 authorizing and approving the sale of the Debtor's interests in substantially all of its assets to Laight, subject to higher and better offers, free and clear of all liens, claims and encumbrances and granting

related relief, and waiver of stay under Bankruptcy Rule 6004 and 6006; and (2) an order establishing sale procedures, including approval of a break-up fee and expense reimbursement, contract cure procedures, and shortened notice of hearing.

24. As part of the Sale Motion, Applicant prepared for and attended the hearing on the proposed Sale Procedures contained in the Sale Motion (the "Procedures Hearing"). As a direct result of the Sale Motion and the Procedure's Hearing, the Court established Sale Procedures, including approval of a break-up fee and expense reimbursement, assignment procedures and notice guidelines (ECF Doc. No. 20).

25. During the Application Period, Applicant assisted the Debtor in determining which executory contracts to assume and assign to Laight as part of the Sale Motion. Additionally, Applicant prepared a Notice of Cure Amounts for those same executory contracts.

26. During the Application Period, Applicant assisted the Debtor in a marketing program consistent with the Procedures Order.

27. On the Auction Date, Applicant prepared for and conducted the Sale at its office.

28. Thereafter, negotiations between Laight and the Landlord to assume the Lease were terminated. Thus, during the Application Period, Applicant worked as an informal mediator between Laight and the Landlord in order to preserve the Sale and the net benefit to the Debtor's estate.

29. Additionally, Applicant prepared for and attended a hearing on Sale (the "Sale Hearing"). As a result of the Sale Motion and the Sale Hearing, the Court: (i) approved the Sale of the Debtor's Assets outside the ordinary course of business; (ii) authorized the Sale of the Assets free of the Liens; (iii) authorized and approved the APA; and (iv) approved the assumption and assignment of the Contracts. Subsequently, Applicant assisted the Debtor in closing on the Sale with Laight.

Case Administration

30. Applicant devoted a substantial amount of time working with the Debtor to prepare the Debtor's Petition, Schedules, and Statement of Financial Affairs, as well as an amendment to the Schedules.

31. During the Application Period, Applicant advised the Debtor with respect to satisfying the requirements of the Bankruptcy Code and Bankruptcy Rules regarding the obligations of a debtor and debtor in possession, including (a) the review and filing of a monthly operating reports; (b) complying with the orders of the Court and guidelines of the Office of the United States Trustee; (c) responding to inquiries from creditors; and (d) preparing and attending status conferences and other hearings before this Court.

32. Applicant was in regular communication with the Debtor's managing member, the Debtor's accountant, and counsel to various creditors. Moreover, Applicant contacted the NYS DTF in an effort to remove the padlock from the Premises. Additionally, Applicant communicated with various utility companies and vendors in an effort to allow the Debtor to continue to manage its property as a debtor and debtor in possession.

33. During the Application Period, Applicant attended the Initial Debtor Interview. Applicant also coordinated and adjournment of the Section §341(a) Meeting of Creditors with the Office of the US Trustee pending the Sale.

34. Applicant was in regular communication with the Debtor's management, Debtor's members, and counsel to Laight regarding the status and progress of the case.

<u>Claims Administration</u>

35. During the Application Period, Applicant also reviewed certain claims filed by various entities, including the claims asserted by various taxing authorities.

36. In preparation for the Sale, Applicant reviewed all scheduled and filed proofs of claim, including correspondence with certain claimants who requested additional information.

37. Particularly, Applicant reviewed the claim filed by NYS DTF, asserted on behalf of an underlying tax lien. Applicant engaged in negotiations with the NYS DTF to remove the

8                                           CM/1389019.3/062912

padlock from the Debtor's Premises in order to affect an orderly and timely sale of substantially all of the Debtor's assets.

38. Applicant also reviewed both scheduled and filed proofs of claim at the request of Laight in order to determine whether unpaid alcohol vendors were properly scheduled in order to transfer remaining inventory pursuant to the New York State Liquor Authority's requirements.

39. Applicant reviewed the Debtor's unpaid payroll as of the Petition Date in order to determine the amount of a potential carveout in the Motion to Dismiss on behalf of the Debtor's former employees.

Motions

40. During the Application Period, Applicant prepared and filed several motions of the Debtor's behalf in order to move the Debtor toward the sale of substantially all of its Assets to Laight free and clear of all liens and encumbrances.

41. Finally, during the Application Period, Applicant prepared and filed the Motion to Dismiss. The Motion to Dismiss requested entry of an order: (i) approving an Insurance Settlement with Admiral; (ii) providing for the dismissal of the Debtor's chapter 11 case; and (iii) authorizing the distribution of estate proceeds in connection with the dismissal.

Retention Orders

42. During the Application Period, Applicant prepared and filed the Retention Application to employ SilvermanAcampora LLP as counsel for the debtor and debtor in possession.

43. In connection with the Retention Application, Applicant communicated with the Office of the US Trustee in order to affect a timely filing without objections.

Summary of Time Charges

44. In compliance with Section B.4 of the Guidelines, Applicant has carefully distinguished among the discrete matters upon which Applicant has expended time. Specifically, during the Application Period, the following fees were incurred by Applicant:

- Asset Analysis – Matters pertaining to the identification and review of potential assets of the Debtor, including, but not limited to the Insurance Settlement and substantially all other of the Debtor's Assets which were subject to the APA. ($2,775.00)

- Asset Sale – Matters pertaining to the sale of the Debtor's assets, including, but not limited to, the sale of substantially all of the Debtor's assets to Laight pursuant to an APA, Sale Motion, Procedures Order, Sale Motion, Notice of Cure, and Closing. ($18,054.00)

- Case Administration - Matters pertaining to the administration of the case including, but not limited to, drafting the Debtor's Schedules and Statement of Financial Affairs, advising the Debtor with respect to its operations as a debtor-in-possession, attendance at hearings and status conferences, adjourning the Section 341(a) Meeting of Creditors, attending Initial Debtor Interview, review of operating reports, corresponding with counsel for individual creditors, analysis of financial information, responding to information inquiries from the individual creditors, and review of certain executory contracts. ($36,370.50)

- Claims Administration – Matters pertaining to the review of claims based on specific claim inquiries, analysis of certain claims, including but not limited to, the claim asserted by NYS DTF and the senior secured creditor. ($1,216.50)

- Motions – Applicant prepared several motions including, but not limited to, the Sale Motion and the Motion to Dismiss ($7,645.00).

- Retention Orders and Objections - Preparation of application for authority to retain SilvermanAcampora LLP, attorneys for the Debtor, and discussions with the Office of the United States Trustee regarding same ($2,170.50).

## **LEGAL STANDARD**

45. Bankruptcy Code §330(a)(1)(A) provides that the level of compensation that the court may award to a professional, including the debtor's attorney, should be "reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by any such person . . . ." 11 U.S.C. §330(a)(1)(A).

46. In awarding compensation to retained professionals pursuant to Bankruptcy Code §§330 and 331, courts take into account the cost of comparable non-bankruptcy services, among other factors. *In re Busy Beaver Bldg. Center, Inc.*, 19 F.3d 833, 848 (3d Cir. 1994) ("[T]he principal purpose of the 1978 amendments to section 330 was to compensate

bankruptcy attorneys at the same level as non-bankruptcy attorneys."). *See also*, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 329 (1977) ("Bankruptcy specialists, however, if required to accept fees in all cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field."); 124 Cong. Rec. H11, 091-92 (daily ed. Sept. 28, 1978); §17, 408 (daily ed. Oct. 6, 1978).

47.     When reviewing fee applications, courts generally use the "lodestar" approach, pursuant to which the court first establishes a reasonable hourly rate of compensation based on the value of the services provided and the cost of comparable services, and then multiplies such rate by the reasonable number of compensable hours. *See Busy Beaver*, 19 F.3d at 849, n.21. *See also*, *In re Drexel Burnham Lambert Group, Inc.* 133 B.R. 13, 21-22 (Bankr. S.D.N.Y. 1991) (stating courts employ lodestar approach "with the 'strong presumption' that the lodestar product is reasonable under §330") (citations omitted); *In re West End Fin. Advisors, LLC,* 2012 Bankr. LEXIS 3045, *12 (Bankr. S.D.N.Y. July 12, 2012) ("The rules that govern fee awards and time record keeping in bankruptcy mirror those that apply in non-bankruptcy cases. Courts outside of bankruptcy generally apply the 'lodestar' method . . . .") (citations omitted)*; In re Cena's Fine Furniture, Inc.*, 109 B.R. 575, 581 (E.D.N.Y. 1990).

48.     When determining whether services for which compensation is sought were reasonable, courts should only disallow fees where "a [c]ourt is convinced it is readily apparent that no reasonable attorney should have undertaken that activity or project or where the time devoted was excessive." *In re Drexel*, 133 B.R. at 23. *See also*, *In re W. End Fin. Advisors, LLC,* 2012 Bankr. LEXIS 3045, at *11 ("A court does not determine 'reasonableness' through hindsight." (citing *In re Drexel,* 133 B.R. at 23)); *Nicholas v. Oren (In re Nicholas),* 2011 Bankr. LEXIS 4498, *16 (Bankr. E.D.N.Y. 2011) ("[C]ourts are 'not to penalize attorneys by viewing the efforts of counsel with the benefit of '20/20 hindsight.'"" (quoting *In re Drexel,* 133 B.R. at 23)).

49. Additionally, Bankruptcy Code §503(b) provides that, after notice and a hearing, administrative expenses can be awarded and paid including "compensation and reimbursement awarded under section 330(a)." 11 U.S.C. §503(b)(3).

50. Bankruptcy Code §504 prohibits professional persons receiving compensation under Bankruptcy Code §503 from sharing or agreeing to share: "(1) any such compensation or reimbursement with another person; or (2) any compensation or reimbursement received by another person under such sections." 11 U.S.C. §504(a).

51. Applicant respectfully requests that this Court consider that the services required to be performed have been efficiently performed with effective results. Applicant has expended substantial time rendering professional services to the Debtor in furtherance of the rights and interests of the Debtor's estate. Moreover, Applicant's services enabled the Debtor sell substantially all of its assets to Laight and create value, as was the Debtor's intention at the outset of this bankruptcy case.

52. All services for which compensation and reimbursement of expenses are requested by Applicant were performed for and on behalf of the Debtor. No agreement or understanding exists between Applicant and any other person for the sharing of compensation to be received for the services rendered in connection with Applicant's representation of the Debtor, and no action prohibited by Bankruptcy Code §504 has been made by Applicant. Annexed hereto as **Exhibit E** is a Certification required by this Court's Administrative Order dated January 29, 2013.

53. No previous application or motion for the relief requested herein has been made to this or any other Court.

## CONCLUSION

54. It is impracticable to set forth in a fee application a detailed description of each and every service rendered to the Debtor. SilvermanAcampora, however, believes that this Application appropriately sets forth the more significant matters handled and provides this Court

with a comprehensive overview of the scope of the services rendered. Thus, SilvermanAcampora submits the fees sought herein are reasonable and the services rendered were necessary, effective, efficient and economical.

55. Therefore, SilvermanAcampora respectfully requests that this Application for final allowance and payment of fees and reimbursement of expenses be granted in all respects.

**WHEREFORE,** SilvermanAcampora seeks the entry of an order (i) approving its final fee application for the award and payment of allowance for compensation for services rendered to the Debtor in the amount of $68,231.50, (ii) authorizing and directing the reimbursement of expenses of $2,780.56, and (iii) granting such further relief as this Court may deem just and proper.

Dated: Jericho, New York
October 2, 2013

                              **SILVERMANACAMPORA LLP**
Attorneys for LKS Concepts LLC,
d/b/a Dylan Prime

By:   s/Gerard R. Luckman
        Gerard R. Luckman
        A Member of the Firm
        100 Jericho Quadrangle, Suite 300
        Jericho, New York 11753
        (516) 479-6300